UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON, | Case No. 2:17-CV-1033 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is defendant Kupperlin Law Group, LLC's ("Kupperlin") first motion for partial summary judgment. (ECF No. 33). Plaintiff Bank of New York Mellon ("BNYM") filed a response (ECF No. 43), to which Kupperlin replied (ECF No. 48).

Also before the court is Kupperlin's second motion for partial summary judgment. (ECF No. 35). Plaintiff filed a response (ECF No. 44), to which Kupperlin replied (ECF No. 47).

Also before the court is plaintiff's motion to dismiss Kupperlin's counterclaim. (ECF No. 42). Kupperlin filed a response (ECF No. 45), to which plaintiff replied (ECF No. 49).

**I.  Introduction**

This action involves the parties' interests in real property located at 11966 Port Labelle Drive, Las Vegas, Nevada, 89141 ("the property"). (ECF No. 1).

*a. Plaintiff's interest in the property*

On August 26, 2005, Michael and Julia Frye ("the Fryes") obtained a loan from Countrywide Home Loans, Inc. ("Countrywide") for $1,000,000 to finance ownership of the property. (ECF No. 59-1). The Fryes executed a promissory note in favor of Countrywide, as well as a deed of trust to secure repayment of the loan. *Id.* The deed of trust, recorded on August

**James C. Mahan**
**U.S. District Judge**

31, 2005, listed Countrywide as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary solely as nominee for the lender and the lender's successors and assigns. *Id.*

On September 12, 2011, MERS executed a corporate assignment of deed of trust, naming plaintiff as beneficiary. *Id.*

  *b. Defendants' interest in the property*

On December 12, 2008, Red Rock Financial Services ("RRFS"), acting on behalf of defendant Christopher Communities at Southern Highlands Golf Club Homeowners Association ("the HOA") recorded a notice of delinquent assessment lien, stating an amount due of $2,275.03. (ECF No. 1). On February 20, 2009, RRFS, on behalf of the HOA, recorded a notice of default and election to sell, stating an amount due of $3,871.58. *Id.*

"[A]t some point in time before September 7, 2012, First 100 entered into an agreement with the HOA to purchase the delinquency, if any, owed by the [Fryes] to the HOA." *Id.* "Per the purchase and sale agreement, [RRFS] was removed as the HOA's agent and replaced with Kupperlin." *Id.* "First 100 transferred a sum of money equal to nine months of unpaid assessments to the HOA in exchange to [sic] the rights to collect on the alleged delinquent account and foreclose upon the property." *Id.* "Kupperlin was instructed not to postpone any foreclosure sale, even if few or no bidders were present." *Id.*

On September 7, 2012, Kupperlin, on behalf of the HOA, recorded a notice of foreclosure sale. *Id.* On September 29, 2012, Kupperlin foreclosed against the property. *Id.* Defendant First 100 purchased the property at the foreclosure sale for $22,346.67. *Id.* A foreclosure deed was recorded on October 4, 2012. *Id.* On February 4, 2013, First 100 transferred its interest in the property to the Lahrs Family Trust ("the Trust"). *Id.*

  *c. Plaintiff's complaint*

Plaintiff challenges the legal effect of the September 29, 2012, HOA foreclosure sale and seeks to preserve its pre-sale interest in the property. *Id.* Plaintiff alleges the following causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and Kupperlin; (3) wrongful foreclosure against the HOA and Kupperlin; (4)

injunctive relief against the Trust; and (5) deceptive trade practices against the HOA and Kupperlin. *Id.*

On June 30, 2017, Kupperlin filed a counterclaim against plaintiff's attorney, Natalie Winslow. (ECF No. 29). The filing states that Kupperlin sent Winslow letters informing her that plaintiff's complaint failed to state viable causes of action against Kupperlin. *Id.* Kupperlin requested that Winslow withdraw or voluntarily dismiss her client's claims against Kupperlin, and threatened to file a counterclaim against her if she failed to do so. *Id.* When Winslow did not withdraw her client's claims against Kupperlin, it filed a counterclaim against Winslow, alleging a statutory violation of NRS § 7.085(1).

**II.  Legal Standard**

*a. Motion for summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

1    By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

*b. Motion to dismiss*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that

**James C. Mahan**
**U.S. District Judge**

- 5 -

are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

As an initial matter, claim (4) of plaintiff's complaint will be dismissed without prejudice as the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g., In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

*a. Kupperlin's motions for partial summary judgment*

In its first motion for summary judgment, Kupperlin argues that plaintiff's fifth cause of action, for violations of Nevada's Deceptive Trade Practices Act, fails to state a claim upon which relief can be granted. (ECF No. 33).

This court has previously held that the Nevada Deceptive Trade Practices Act does not apply to mortgage and real estate transactions. *Baudoin v. Lender Processing Servs.*, case no. 2:12-cv-00114-JCM-CWH, 2012 WL 2367820, at *3 (D. Nev. June 21, 2012); *Archer v. Bank of Am. Corp.*, no. 2:11-cv-01264-JCM-RJJ, 2011 WL 6752562, at *2 (D. Nev. Dec. 23, 2011); *see also Morris v. Green Tree Servicing, LLC*, no. 2:14-cv-01998-GMN-CWH, 2015 WL 4113212, at *15 (D. Nev. July 8, 2015) (collecting cases).

Plaintiff cites to *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) for the proposition that a Nevada Deceptive Trade Practices Act claim may lie in the real estate context. (ECF No. 43). As another court in this district has explained,

> The Nevada Supreme Court has applied N.R.S. Chapter 598 to a real estate transaction only one time, in [*Betsinger*]. However, the facts in this case are distinguishable from those in *Betsinger*, which involved a so–called "bait and switch tactic" by a developer with regard to the interest rate offered to a homeowner.

*Hagos v. Washington Mutual Bank*, no. 2:15-cv-01606-APG-VCF, 2016 WL 3638111, at *5 n.4 (D. Nev. July 6, 2016),

Accordingly, the court holds that plaintiff's Deceptive Trade Practices Act claim fails to state a claim upon which relief can be granted. *See Baudoin*, 2012 WL 2367820, at *3. Defendants are therefore entitled to judgment as a matter of law on the claim. The court will grant Kupperlin's first motion for partial summary judgment.

In its second motion for summary judgment, Kupperlin argues that plaintiff's second, third, and fifth causes of action are time-barred.[1] (ECF No. 35). Plaintiff responds that these causes of action do not accrue until entry of an adverse judgment against plaintiff on its quiet title claim, which has yet to occur. (ECF No. 44).

   *1. Breach of NRS 116.1113*

Claim (2) of BNYM's complaint alleges that the HOA and Kupperlin violated NRS 116.1113, which imposes an obligation of good faith in every contract or duty governed by Chapter 116. (ECF No. 1). For relief, BNYM seeks damages in the amount of either the property's fair market value or the unpaid principal on the loan as of the date of the HOA sale. *Id.*

Because claim (2) is a claim for damages based on the alleged breach of a statutory duty, it must be brought within three years. *See* Nev. Rev. Stat. § 11.190(3)(a). The foreclosure sale took place on September 29, 2012. BNYM brought this lawsuit more than three years later, on April 11, 2017. Therefore, claim (2) is time-barred, and Kupperlin's motion to dismiss will be granted as to this claim.

   *2. Wrongful foreclosure*

Claim (3) of plaintiff's complaint alleges that the foreclosure sale was wrongful because the HOA failed to give proper notice and an opportunity to cure the deficiency and the HOA sold the property for a grossly inadequate amount. (ECF No. 1). Plaintiff seeks damages in the amount of the property's fair market value or the unpaid principal loan balance as of the time of the foreclosure sale. *Id.*

---

[1] As the court has already held that plaintiff's Nevada Deceptive Trade Practices Act claim fails to state a viable cause of action against Kupperlin, the court will not address Kupperlin's alternative argument that it is barred by the statute of limitations.

**James C. Mahan**
**U.S. District Judge**

- 7 -

A tortious wrongful foreclosure claim "challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013). Kupperlin's authority to foreclose on the HOA lien arose from Chapter 116, essentially rendering claim (3) a claim for damages based on liability created by a statute. Therefore, claim (3) is time-barred under NRS 11.190(3)(a) because it was not brought within three years of the foreclosure sale.

*b. Plaintiff's motion to dismiss*

Plaintiff filed a motion to dismiss Kupperlin's counterclaim against attorney Natalie Winslow for violation of NRS § 7.085(1). (ECF No. 42). Plaintiff asserts, *inter alia*, that § 7.085(1) does not provide for a separate cause of action. *Id.* Kupperlin responds that § 7.085(1) provides a private cause of action. (ECF No. 45).

NRS 7.085 does not provides for a stand-alone, separate cause of action. In its response, Kupperlin conflates the terms "separate" and "private." *See* (ECF No. 45). The case that Kupperlin cites in its filing illustrates that attorney's fee awards under NRS 7.085 are part of motions and are not separate claims. *See Pub. Employees' Ret. Sys. Of Nev. v. Gitter*, 133 Nev. Adv. Op. 18 (Apr. 27, 2013).

Further, Kupperlin's filing falls well short of demonstrating that Winslow engaged in sanctionable conduct. Acting on behalf of her client, Winslow pursued non-frivolous arguments to support causes of action in the complaint. Regarding the second and third causes of action, she pursued a tenable argument regarding the applicable triggering event for statute of limitations analysis. *See* (ECF No. 44). Regarding the fifth cause of action, she cited Nevada Supreme Court and District of Nevada precedent to support her client's position that it could maintain a Nevada Deceptive Trade Practices Act claim against Kupperlin. *See* (ECF No. 43). Kupperlin's glib counterclaim will be dismissed with prejudice.

**IV. Conclusion**

The court will grant summary judgment in favor of defendants on plaintiff's fifth cause of action. The court will dismiss plaintiff's second and third causes of action for failure to comply with the applicable statute of limitations.

The court will dismiss Kupperlin's counterclaim for failure to state a claim upon which relief can be granted.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Kupperlin's first motion for partial summary judgment (ECF No. 33) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Kupperlin's second motion for partial summary judgment (ECF No. 35) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion to dismiss (ECF No. 42) be, and the same hereby is, GRANTED.

DATED March 23, 2018.

_____
UNITED STATES DISTRICT JUDGE