UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1033 JCM (GWF)<br><br>ORDER |

Presently before the court is plaintiff Bank of New York Mellon's ("BNYM") motion for summary judgment. (ECF No. 59). Defendant Kupperlin Law Group ("Kupperlin") filed a response (ECF No. 65), as did defendants Alan Lahrs and Theresa Lahrs ("The Lahrs") (ECF No. 69). Thereafter, plaintiff filed a reply. (ECF No. 72).

Also before the court is Kupperlin's motion for summary judgment. (ECF No. 60). Plaintiff filed a response (ECF No. 70), to which Kupperlin replied (ECF No. 71).

Also before the court is the Lahrs' motion to dismiss. (ECF No. 52). Plaintiff filed a response (ECF No. 55), to which the Lahrs replied (ECF No. 57).

**I.   Facts**

The present case concerns a dispute over real property located at 11966 Port Labelle Drive, Las Vegas, Nevada, 89141 ("the property"). (ECF No. 1).

In August of 2005, Michael and Julie Frye purchased the property. *Id.* The Fryes financed their purchase through a loan of $1,000,000. *Id.* The note was secured by a deed of trust, recorded on August 31, 2005. *Id.* The deed of trust lists Countrywide Home Loans, Inc. as the lender and

Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary "solely as nominee for Lender and Lender's successors and assigns." (ECF No. 59-1).

On December 12, 2008, Red Rock Financial Services ("RRFS"), acting on behalf of Christopher Communities at Southern Highlands Golf Club Homeowners Association ("the HOA"), recorded a notice of delinquent assessment lien, stating an amount due of $2,275.03. *Id.* On February 20, 2009, RRFS, acting on behalf of the HOA, recorded a notice of default and election to sell, stating an amount due of $3,871.58. *Id.* On May 4, 2009, RRFS sent MERS a letter detailing the Frye's delinquency and describing the HOA's intent to foreclose on the property. *Id.* When describing the priority of the lien, RRFS stated, "[t]he Association's Lien for Delinquent Assessments is Junior only to the Senior Lender/Mortgage Holder." *Id.* On February 3, 2011, and June 6, 2012, RRFS re-sent the same letter to MERS. *Id.*

On September 12, 2011, MERS assigned beneficial interest in the deed of trust to plaintiff. *Id.*

"[A]t some point in time before September 7, 2012, [defendant] First 100 entered into an agreement with the HOA to purchase the delinquency, if any, owed by the [Fryes] to the HOA." *Id.* The agreement contained several notable provisions. The HOA retained its lien interest, but sold its interest in receivables arising from or related to the lien in exchange for nine months of unpaid assessments. (ECF No. 59-2 at 5, 15); *see* (ECF No. 1) ("First 100 transferred a sum of money equal to nine months of unpaid assessments to the HOA in exchange to [sic] the rights to collect on the alleged delinquent account and foreclose upon the property."). *Id.* The HOA agreed to not negotiate or impair the value of the account upon which the lien was based. (ECF No. 59-2 at 8-9). The HOA promised that it would not send anyone to the foreclosure sale to bid "in any amount in excess of the Opening Bid" of $99. (ECF No. 59-2 at 9).

"Per the purchase and sale agreement, [RRFS] was removed as the HOA's agent and replaced with Kupperlin." *Id.* "Kupperlin was instructed not to postpone any foreclosure sale, even if few or no bidders were present." *Id.*

On September 7, 2012, Kupperlin recorded a notice of foreclosure sale, stating an amount due of $22,346.67. (ECF No. 1). On September 29, 2012, Kupperlin foreclosed against the

property. *Id.* Defendant First 100 was the only bidder at the foreclosure sale. (ECF No. 59-2 at 46). First 100 purchased the property at the foreclosure sale for $151.[1] *Id.* at 3. A foreclosure deed was recorded on October 4, 2012. *Id.* at 50. On February 4, 2013, First 100 transferred its interest in the property to the Lahrs Family Trust ("the Trust") for $509,513.78. *Id.* at 54.

Plaintiff's complaint alleges the following causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and Kupperlin; (3) wrongful foreclosure against the HOA and Kupperlin; (4) injunctive relief against the Trust; and (5) deceptive trade practices against the HOA and Kupperlin. *Id.* On June 30, 2017, Kupperlin filed a counterclaim against plaintiff's attorney, Natalie Winslow. (ECF No. 29).

On March 23, 2018, the court dismissed plaintiff's claim for injunctive relief and Kupperlin's counterclaim. (ECF No. 73).

**II.    Legal Standard**

   *a.   Failure to state a claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual

---

[1] In the court's order denying Kupperlin's motion for summary judgment, the purchase price is cited as $22,346.67, which is the sale price that Kupperlin allegedly wrote into the foreclosure deed. However, the receipt of sale notice states that the winning bid amount at the foreclosure sale was $151. (ECF No. 59-2 at 3).

James C. Mahan
U.S. District Judge

allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

    b. *Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be

entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

*a. Plaintiff's motion for summary judgment*

Plaintiff raises the following grounds in support of its motion for summary judgment: the constitutionality of NRS 116.3116 and the Ninth Circuit decision in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"); the HOA foreclosed on the sub-priority piece of its loan only; "splitting the lien from the payment right rendered the HOA's lien un-forecloseable;" and the foreclosure sale was commercial unreasonable. (ECF No. 59).

The court will first address plaintiff's argument that the sale was commercially unreasonable, as the court's holding on that issue necessitates quieting title in favor of plaintiff.

*i. Commercial reasonability*

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*,

918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[2] gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules). NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable);

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Notably, the *Shadow Wood* court did not adopt the restatement's position on the 20% threshold test for grossly inadequate sales price. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement

---

*Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

BNYM cites *ZYZZX2 v. Dizon*, no. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016) to support its position that the foreclosure sale in this case was commercially unreasonable. (ECF No. 59 at 11). In *ZYZZX2*, the subject property was governed by CC&R's which contained a mortgage protection clause. *Id.* at 5. Prior to foreclosure, the HOA trustee sent out misleading mailings that suggested the foreclosure sale would not extinguish the first deed of trust on the property. *Id.* at *4. The property sold at a foreclosure sale for $15,000. *Id.* at *1. This court held that the mailings, in addition to the CC&R's mortgage protection clause and the "disproportionately low price" at foreclosure,[4] constituted unfairness that warranted setting aside the sale as commercially unreasonable. *Id.* at *4–5.

Here, First 100 allegedly purchased the right to foreclose on the property from the HOA. Thereafter, Kupperlin, acting as First 100's agent, conducted foreclosure proceedings where, by design, First 100 was the only bidder at the sale. Pursuant to the parties' contract, the HOA agreed to "not send any person or agent to credit bid for or on behalf of the Seller on any Parcel in any amount in excess of the Opening Bid." (ECF No. 59-2 at 9). After the HOA's opening credit bid of $99, First 100 offered the highest (and only other) bid at the sale, $151. (ECF No. 59-2). This

---

[4] The property was valued at $210,863, *ZYZZX2*, 2016 WL 1181666, at *1, making a sale price of $15,000 approximately 7% of fair market value.

- 9 -

price was less than 0.7% of the lien interest being foreclosed upon ($22,346.67).[5] After the foreclosure sale, First 100 transferred its interest in the property to the Trust for over $500,000.

Further, as in *ZYZZX2*, RRFS sent plaintiff's predecessor-in-interest three separate mailings stating that the HOA's lien interest subject to foreclosure was junior to the first deed of trust. 2016 WL 1181666, at *4. Furthermore, the CC&R's contained a mortgage protection clause, (ECF No. 59-1 at 34-39), which plaintiff alleges reinforced RRFS' position that any foreclosure sale would not extinguish the first deed of trust.

   *ii.    Whether the agreement between First 100 and the HOA rendered the lien interest unenforceable*

Plaintiff also argues that the purchase sale agreement between First 100 and the HOA rendered the lien interest un-foreclosable. (ECF No. 59). As there is no direct caselaw on point, plaintiff analogizes this case to *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249 (Nev. 2012). In *Edelstein*, the Supreme Court of Nevada held that a lender's designation of a separate entity as a deed-of-trust beneficiary split the deed of trust from the note's payment right, which "ma[de] it impossible to foreclose the mortgage." *Id*. at 254.

Plaintiff argues that the holding in *Edelstein* applies to the HOA foreclosure context for two primary reasons. First, Nevada law incorporates the law of real property to Chapter 116, which includes *Edelstein*. Second, *Edelstein's* rationale applies equally to HOA foreclosures as it does to deed of trust foreclosures. The court agrees.

Here, First 100 and the HOA entered into an agreement that split the underlying lien (which the HOA retained) from the right to collect on the delinquent account (which First 100 obtained). (ECF No. 59-2). As the court held in *Edelstein*, the holder of a note has the right to repayment only, and does not have the right to use the property to satisfy repayment. 286 P.3d at 254. In this case, First 100 had the right to repayment of the Fryes' HOA delinquency, but did not have a lien interest in the property that it could foreclose on to satisfy the obligation.[6] Therefore, pursuant to

---

[5] Further, this price was less than 0.025% of the estimated fair market value of the property at the time of foreclosure ($600,000).

[6] The agreement's language stating that First 100 purchased the right to foreclose on the property does not alter this analysis. The agreement explicitly states that the HOA retained the lien.

*Edelstein*, First 100 did not possess the right to foreclose on the property. *See Edelstein*, 286 P.3d at 259.

   *iii. Summary*

In short, First 100 negotiated for the ability to conduct its own foreclosure sale and buy the property at a severely depressed price after the HOA trustee represented to the bank that the foreclosure sale would not impact the first deed of trust. These facts are sufficient to justify setting aside the foreclosure sale as commercially unreasonable. *Cf. ZYZZX2*, 2016 WL 1181666 (misleading statements regarding the effect of foreclosure, coupled with a sale price of 7% of fair market value and CC&R's containing a mortgage protection clause warranted setting aside a sale as commercially unreasonable). In addition, First 100's purchase sale agreement with the HOA split the lien from the payment right, thereby rendering the lien un-enforceable. Therefore, plaintiff's first deed of trust was not extinguished by the foreclosure proceedings. *See id.* The court will grant plaintiff's motion for summary judgment on its claim for quiet title.

  *b. Defendants' motion to dismiss and motion for summary judgment*

The court holds that the foreclosure sale was commercially unreasonable. Therefore, the court will deny the Lahrs' motion to dismiss, which argues that plaintiff's complaint fails to state a claim upon which relief can be granted. Because Kupperlin's motion for summary judgment requests judgment on plaintiff's claim for quiet title based on the theory that First 100 obtained an interest in the property at the foreclosure sale that it subsequently transferred to the Trust, the court will deny the motion.

**IV. Conclusion**

  Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (ECF No. 59) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Kupperlin's motion for summary judgment (ECF No. 60) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the Lahrs' motion to dismiss (ECF No. 52) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff shall prepare and submit to the court a proposed judgment consistent with the foregoing within thirty (30) days of the date of this order.

DATED June 27, 2018.

_____
UNITED STATES DISTRICT JUDGE