UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1033 JCM (GWF)<br><br>ORDER |

Presently before the court is defendants Alan and Theresa Lahrs ("the Lahrs'") motion for reconsideration. (ECF No. 78). Plaintiff Bank of New York Mellon ("plaintiff") filed a response (ECF No. 82), to which the Lahrs' replied (ECF No. 86).

Also before the court is plaintiff's motion to certify judgment as final. (ECF No. 83). The Lahrs' filed a response (ECF No. 89), to which plaintiff replied (ECF No. 91).

Also before the court is the Lahrs' motion to amend/correct judgment. (ECF No. 87). Plaintiff filed a response (ECF No. 95), to which the Lahrs' replied (ECF No. 96).

**I.    Facts**

The present case concerns a dispute over real property located at 11966 Port Labelle Drive, Las Vegas, Nevada, 89141 ("the property"), in relation to a non-judicial foreclosure sale conducted pursuant to NRS Chapter 116. (ECF No. 1).

The parties are already familiar with the underlying facts of this case. *See* (ECF Nos. 73, 74). Nevertheless, the procedural history of this case is extensive and complex; therefore, the court will explain the various claims, counterclaims, and third-party claims that have been asserted, as well as the court's previous orders that have led to the instant motions.

**James C. Mahan**
**U.S. District Judge**

Plaintiff initiated this action on April 11, 2017, asserting the following causes of action against the HOA, First 100 (the purchaser of the property at the foreclosure sale), the trustees of the Lahrs Family Trust (which purchased the property from First 100 following the foreclosure sale), and Kupperlin (the HOA's agent at the time of the sale): (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and Kupperlin; (3) wrongful foreclosure against the HOA and Kupperlin; (4) injunctive relief against the Trust; and (5) deceptive trade practices against the HOA and Kupperlin. *Id.*

On June 5, 2017, the HOA filed its answer and crossclaims against Kupperlin, which included claims for: (1) implied indemnity; (2) contribution; (3) apportionment; (4) express indemnity; (5) breach of contract; and (6) declaratory relief. (ECF No. 19).

On June 30, 2017, Kupperlin filed a counterclaim against plaintiff's attorney, Natalie Winslow. (ECF No. 29).

On March 23, 2018, the court dismissed plaintiff's claim for injunctive relief and Kupperlin's counterclaim. (ECF No. 73). Thereafter, on June 27, 2018, the court dismissed all of plaintiff's claims except its quiet title claim, upon which it granted summary judgment in favor of plaintiff. (ECF No. 73).

In its order granting summary judgment in favor of plaintiff, the court found the foreclosure sale to be commercially unreasonable on two grounds: (1) that the subject property was governed by CC&R's which contained a mortgage protection clause; and (2) because the HOA had entered into a "factoring agreement" with First 100, which, in part, led to First 100 being the only bidder at the foreclosure sale, purchasing the property for $151. (ECF No. 74).

The "factoring agreement" provided that First 100 would purchase the delinquency owed to the HOA from the HOA for a discounted price. *Id.* Under the agreement, the HOA would retain its lien interest, but sold its interest in receivables arising from or related to the lien in exchange for nine months of unpaid assessments. *Id.* The HOA agreed to not negotiate or impair the value of the account upon which the lien was based. *Id.* The HOA promised that it would not send anyone to the foreclosure sale to bid "in any amount in excess of the Opening Bid" of $99. *Id.* "Per the purchase and sale agreement, [Red Rock Financial Services] was removed as the HOA's

agent and replaced with Kupperlin." *Id*. "Kupperlin was instructed not to postpone any foreclosure sale, even if few or no bidders were present." *Id*.

In addition to finding that the "factoring agreement" contributed to the foreclosure sale's commercial unreasonableness, the court also found that the "factoring agreement" rendered the lien interest un-foreclosable, based on *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249 (Nev. 2012). *Id.* In *Edelstein*, the Supreme Court of Nevada held that a lender's designation of a separate entity as a deed-of-trust beneficiary split the deed of trust from the note's payment right, which "ma[de] it impossible to foreclose the mortgage." *Edelstein,* 286 P.3d at 254.

Essentially, the court found that while First 100 had the right to repayment of the HOA's delinquency, it did not have a lien interest in the property that it could foreclose upon, because that interest remained with the HOA, pursuant to the "factoring agreement." (ECF No. 74). Therefore, by way of analogy to *Edelstein*, the court found that First 100 did not possess the right to foreclose on the property. *Id.* Accordingly, the court granted summary judgment in favor of plaintiff, and instructed plaintiff to prepare a proposed judgment. *Id.*

However, one day after the court issued its order granting summary judgment in favor of plaintiff, on June 28, 2018, the Nevada Supreme Court issued its opinion in *West Sunset 2050 Trust v. Nationstar Mortgage*, LLC, 420 P.3d 1032 (Nev. 2018). In that case, the Nevada Supreme Court concluded, "in short, unlike the transfer of a promissory note in *Edelstein*, the factoring agreement at issue did not affect the HOA's right to foreclose on the property." *Id.* Accordingly, that court confirmed that the existence of a "factoring agreement," like the one at issue in this case, does not necessarily invalidate an otherwise valid foreclosure sale. *Id.*

Thereafter, on July 16, 2018, the Lahrs filed their answer and third-party complaint/crossclaims against Jay Bloom ("Bloom") (the owner of First 100), Kupperlin, and the HOA. (ECF No. 75). The Lahrs' third-party complaint and crossclaims assert the following causes of action: (1) intentional misrepresentation; (2) fraudulent concealment; (3) fraud in the inducement; (4) negligent misrepresentation; (5) civil conspiracy; and (6) breach of the covenant of good faith and fair dealing. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 3 -

Then, on July 31, 2018, based on the Nevada Supreme Court's ruling in *West Sunset 2050 Trust*, the Lahrs moved for reconsideration of the court's June 27, 2018, order. (ECF No. 78). However, later that same day, the court entered judgment in favor of plaintiff. (ECF No. 79).

Accordingly, on August 14, 2018, plaintiff moved to certify its judgment as final. (ECF No. 83). Thereafter, on August 27, 2018, the Lahrs' moved to amend/correct judgment. (ECF No. 87). The court now considers the foregoing motions.

**II.     Legal Standards**

   *a. Motion to reconsider pursuant to FRCP 59(e)*

A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); Fed. R. Civ. P. 60(b). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

Rule 59(e) "permits a district court to reconsider and amend a previous order." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted). However, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.* A motion for reconsideration "may not be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in litigation." *Kona Enters., Inc.*, 229 F.3d at 890.

   *b. Motion for relief from judgment pursuant to FRCP 60*

Federal Rule of Civil Procedure 60(b) provides, in relevant part, that the court may relieve a party from an order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Further, Rule 60(c)(1) provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

   c. *Motion for entry of final judgment*

In general, circuit courts review only final orders and decisions of a district court. *See* 28 U.S.C. § 1295(a)(1). Rule 54(b) provides an exception, allowing district courts to certify a partial final judgment for the purpose of appeal by directing entry of final judgment as to one or more, but fewer than all, of the claims if the there is an express determination that there is no just reason for delay. *See* Fed. R. Civ. P. 54(b).

The Supreme Court has established a two-step process for district courts to determine whether certification of a claim in a multiple claims action under Rule 54(b) is warranted. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980). First, the judgment must be final with respect to one or more claims. *See id.* A district court's judgment is final where it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).

Second, district courts conduct a two-step analysis "to determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. In the first step, courts consider administrative factors such as "the interrelationship of the claims so as to prevent piecemeal appeals." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006) (citation omitted). In the second step, courts assess the equities involved in the case. *Curtiss-Wright*, 446 U.S. at 8.

**III. Discussion**

   a. *The Lahrs' motion for reconsideration*

The court finds that the Lahrs' motion for reconsideration must be denied. Although the Lahrs' correctly cite *West Sunset 2050 Trust* for the proposition that the existence of a "factoring agreement" does not necessarily render a foreclosure sale invalid, the "factoring agreement" in this

**James C. Mahan**
**U.S. District Judge**

- 5 -

case was not the sole basis for the court's finding that the foreclosure sale was commercially unreasonable. *See* (ECF No. 74).

Indeed, the court in *West Sunset 2050 Trust* did not address certain promises or provisions of the "factoring agreement" that are at issue in this case; specifically, the HOA's promise that it would not send anyone to the foreclosure sale to bid in an amount in excess of the opening bid of $99. *See generally West Sunset 2050 Trust*, 420 P.3d 1032. The Nevada Supreme Court also did not address facts similar to the HOA's instruction to Kupperlin not to postpone any foreclosure sale, even if few or no bidders were present. *Id.* Accordingly, *West Sunset 2050 Trust* is not instructive with respect to the court's commercial unreasonableness analysis.

Indeed, in its order granting summary judgment in favor of plaintiff, the court found that the intentional suppression of the sale price of the property at the foreclosure sale rendered the sale commercially unreasonable. *See* (ECF No. 74). Accordingly, the court held not that the *existence* of the "factoring agreement" rendered the sale commercially unreasonable, but rather that the *effect* of certain provisions of the agreement and the promises made by the HOA and Kupperlin prior to the sale rendered the foreclosure sale commercially unreasonable.

Accordingly, the court is presented with no authority warranting reconsideration of its previous order. Therefore, the Lahrs' motion for reconsideration is denied. (ECF No. 78).

b. *The Lahrs' motion to amend/correct judgment*

For the reasons stated above, the court also finds that the Lahrs' are not entitled to relief from judgment. Accordingly, the Lahrs' motion to amend/correct judgment is denied. (ECF No. 87).

c. *Plaintiff's motion to certify judgment as final*

Plaintiff argues that the court should certify its judgment as final, despite the still-pending third-party claims at issue in this case. (ECF No. 83). Plaintiff submits that the court's June 27, 2018, order definitively resolved the central legal question underpinning all the claims regarding title to the property—whether the HOA foreclosure sale extinguished plaintiff's deed of trust. *Id.*

Indeed, the remaining claims in this case are between the HOA, Kupperlin, the Lahrs' (the current owners of the property), First 100, and Jay Bloom (the owner of First 100), and surround

James C. Mahan
U.S. District Judge

the secondary issue of which party should assume the loss resulting from the HOA's having conducted a commercially unreasonable foreclosure sale, which resulted in the Lahrs' taking ownership of the property subject to plaintiff's deed of trust. *See* (ECF Nos. 19, 75).

These remaining claims do not implicate plaintiff's position in this case, as the court has unequivocally held that the foreclosure sale did not extinguish its deed of trust on the property. Accordingly, plaintiff moves for the court to certify its judgment as final.

The Supreme Court has established a two-step process for district courts to determine whether certification of a claim in a multiple claims action under Rule 54(b) is warranted. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980). First, the judgment must be final with respect to one or more claims. *See id.* A district court's judgment is final where it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).

Second, district courts conduct a two-step analysis "to determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. In the first step, courts consider administrative factors such as "the interrelationship of the claims so as to prevent piecemeal appeals." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 954 (9th Cir. 2006) (citation omitted). In the second step, courts assess the equities involved in the case. *Curtiss-Wright*, 446 U.S. at 8.

As to the first step, the court finds that judgment is final with respect to plaintiff's quiet title claim. *Curtiss-Wright Corp.*, 446 U.S. at 7–8. Indeed, there is nothing left for the court to do with respect to this claim other than execute the judgment, thereby reinstating plaintiff's deed of trust on the property. *See Catlin*, 324 U.S. at 233.

Next, with respect to the second-step of the analysis, to the extent the remaining third-party claims depend upon the disposition of plaintiff's quiet title claim, the court finds that certification of judgment as to that claim may obviate the need for further litigation in this case. Indeed, upon certification, should any of the defendants to plaintiff's quiet title claim endeavor to appeal the court's ruling and subsequent judgment, and should the Ninth Circuit find that the court erred in

James C. Mahan
U.S. District Judge

- 7 -

finding that plaintiff's deed of trust was not extinguished by the foreclosure sale, all the remaining claims in this action would be rendered moot.

Conversely, should defendants decide not to pursue an appeal, plaintiff is entitled to finality with respect to the court's decision, as it is not a party to the remaining claims in this action. *See Curtiss-Wright*, 446 U.S. at 8. Therefore, the court will grant plaintiff's motion to certify judgment as final. (ECF No. 83).

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Lahrs' motion for reconsideration (ECF No. 78) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to certify judgment as final (ECF No. 83) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the Lahrs' motion to amend/correct judgment (ECF No. 87) be, and the same hereby is, DENIED.

DATED March 14, 2019.

                                                        */s/ James C. Mahan*
                                                      UNITED STATES DISTRICT JUDGE