UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>CHRISTOPHER COMMUNITIES AT SOUTHERN HIGHLANDS GOLF CLUB HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-1033 JCM (GWF)<br><br>ORDER |

Presently before the court is cross-defendant Christopher Communities at Southern Highlands Golf Club Homeowners Association's (the "HOA") motion to dismiss cross-claimant Alan and Theresa Lahrs as Trustees of the Lahrs Family Trust's (the "Lahrses") answer to complaint, cross claims, and third-party complaint for lack of diversity jurisdiction. (ECF No. 92). Cross-defendant Kupperlin Law Group, LLC ("Kupperlin) joined in the motion. (ECF No. 93). The Lahrses filed a response (ECF No. 99), to which the HOA replied (ECF No. 101).

Also before the court is third-party plaintiff Lahrses' motion for partial summary judgment for declaration of title insurance coverage. (ECF No. 127). Third-party defendants Commonwealth Land Title Insurance Company ("Commonwealth") and Lawyers Title Company of Nevada ("Lawyers Title") filed a response (ECF No. 142), to which the Lahrses replied (ECF No. 144).

Also before the court is cross-defendant First 100, LLC's ("First 100") and third-party defendant Jay Bloom's ("Bloom") motion to compel arbitration. (ECF No. 130). The Lahrses filed a limited opposition. (ECF No. 133).

James C. Mahan
U.S. District Judge

**I.    Facts**

This case has been thoroughly litigated, and its procedural posture is staggering. As relevant to this order, the instant action arises from a foreclosure sale of 11966 Port Labelle Drive, Las Vegas, Nevada 89141. (ECF No. 1 at 3). The prior owners of 11966 Port Labelle Drive were delinquent on their HOA assessments. (ECF No. 74 at 2). Red Rock Financial Services, acting on behalf of the HOA, recorded a notice of delinquent assessment lien. *Id.*

Pursuant to a purchase and sale agreement, the HOA assigned its right to payment on the delinquency to First 100 and retained its lien on the property. *Id.* Also pursuant to the purchase and sale agreement, Kupperlin replaced Red Rock Financial Services as the HOA's agent, and the HOA promised that it would not send anyone to the foreclosure sale to bid "in any amount in excess of the Opening Bid" of $99. (ECF No. 59-2 at 9).

"Kupperlin was instructed not to postpone any foreclosure sale, even if few or no bidders were present." (ECF No. 59-2 at 9). As a result, Kupperlin foreclosed on the property. (ECF No. 74 at 2–3). First 100 purchased the for $151. *Id.* at 3.

The court has already granted summary judgment in favor of the plaintiff Bank of New York Mellon ("BNYM") and quieted title in its favor; thus, its first priority lien still encumbers the property. *See generally id.*

The Lahrses filed a third-party complaint against Jay Bloom ("Bloom") and crossclaims against the HOA, Kupperlin, and First 100. (ECF No. 75). The Lahrses allege intentional and negligent misrepresentation against First 100, Bloom, and Kupperlin; fraudulent concealment against First 100 and Bloom; fraud in the inducement against First 100; civil conspiracy against First 100, Bloom, Kupperlin, and the HOA; and breach of the covenant of good faith and fair dealing against First 100. *Id.*

The Lahrses' also filed a third-party complaint against Commonwealth and Lawyers Title seeking a judicial declaration of insurance coverage and alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (ECF No. 114).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

**II. Legal Standard**

*A. Motion to dismiss*

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Federal Rule of Civil Procedure 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008).

Although the defendant is the moving party in a 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court to survive the motion. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). More specifically, the plaintiff's pleadings must show "the existence of whatever is essential to federal jurisdiction, and, if [plaintiff] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

In moving to dismiss under Rule 12(b)(1), the challenging party may either make a "facial attack," confining the inquiry to challenges in the complaint, or a "factual attack" challenging subject matter on a factual basis. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). For a facial attack, the court assumes the truthfulness of the allegations, as in a motion to dismiss under Rule 12(b)(6). *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987). By contrast, when presented as a factual challenge, a Rule 12(b)(1) motion can be supported by affidavits or other evidence outside of the pleadings. *United*

*States v. LSL Biotechs.*, 379 F.3d 672, 700 n.14 (9th Cir. 2004) (citing *St. Clair v. City of Chicago*, 880 F.2d 199, 201 (9th Cir. 1989)).

### B. Motion for summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

*C. Motion to compel arbitration*

The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract affecting interstate commerce. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A party to an arbitration agreement can invoke his or her rights under the FAA by petitioning federal courts to direct that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When courts grant a petition to compel arbitration, the FAA requires stay of litigation "until such arbitration has been had[.]" *Id*. at § 3.

The FAA embodies a clear policy in favor of arbitration. *AT&T Mobility*, 563 U.S. at 339. Courts must rigorously enforce arbitration agreements. *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "[A]ny doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA leaves no place for courts to exercise discretion, but instead mandates courts to enforce arbitration agreements. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985).

However, arbitration is a "matter of contract" and the FAA does not require a party to arbitrate "any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quotes and citation omitted). When determining whether a party should be compelled to arbitrate claims: courts engage in a two-step process. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court must determine: (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue. *Id.*

**III. Discussion**

*A. Motion to dismiss*

The HOA and Kupperlin move to dismiss on two grounds: (1) the court lacks diversity jurisdiction and (2) the court should not assert supplemental jurisdiction over the Lahrses' claims.[1] (ECF No. 92). Indeed, the HOA, Kupperlin, and the Lahrses are all residents of Nevada. (ECF No. 1 at 2–3). Accordingly, the court lacks diversity jurisdiction over the Lahrses' claims because the parties are not diverse. Thus, the court must determine whether supplemental jurisdiction over the Lahrses' cross claims is proper.

"In order for a federal court to invoke supplemental jurisdiction . . . it must first have original jurisdiction over at least one claim in the action." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 554 (2005). For a United States district court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1098 (9th Cir. 2003). "Incomplete diversity destroys

---

[1] The court will not address the HOA and Kupperlin's argument that the Lahrses' answer, cross claims, and third-party complaint were not timely filed. (ECF No. 92). The argument was resolved by the Lahrses' motion for extension of time (ECF No. 80), which the court granted (ECF No. 81).

James C. Mahan
U.S. District Judge

- 6 -

original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere." *Exxon Mobil Corp.*, 545 U.S. at 554.

The court invokes its "full Article III power to dispose of an entire action before the court which comprises but one constitutional case" by asserting supplemental jurisdiction over related claims. *Id.* (internal quotation marks, citations, and alteration omitted). Such claims "may be viewed as part of the same case because they 'derive from a common nucleus of operative fact.'" *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). This principle is codified in 28 U.S.C. § 1367(a):

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

First, the Lahrses' cross claims do not "derive from a common nucleus of operative fact," so 28 U.S.C. § 1367(a) is not grounds for the court to assert jurisdiction over them. BNYM's claims concerned the HOA foreclosure sale itself, whereas the Lahrses' cross claims stem from the subsequent sale from First 100 to the Lahrses. *Compare* (ECF No. 1), *with* (ECF No. 75).

The Lahrses allege intentional and negligent misrepresentation, fraudulent concealment, fraud in the inducement, civil conspiracy, and breach of the covenant of good faith and fair dealing. (ECF No. 75). All of these claims arise from post-foreclosure conduct by various parties and representations made to the Lahrses in a subsequent conveyance. *Id.* Although tangentially related to the foreclosure sale, the circumstances of the Lahrses' purchase of the property from First 100 are distinct from the prior sale to First 100.

Further, assuming *arguendo* that the Lahrses' claims fall within 28 U.S.C. § 1367(a), 28 U.S.C. § 1367(c) provides circumstances when federal district courts may decline to exercise supplemental jurisdiction over a claim, including when "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

The court had original diversity jurisdiction over BNYM's claim against the HOA, Kupperlin, and the Lahrses. (*See* ECF No. 1). But, "[w]hen all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Phanthalasy v. Hawaiian Agents, Inc.*, No. CV 18-00285 JAO-WRP, 2019 WL 2305133, at *7 (D. Haw. May 30, 2019) (quotation marks omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997)). Thus, for the purposes of 28 U.S.C. § 1367(c)(3), the court dismissed BNYM's claim when it entered judgment in favor of BNYM. (ECF No. 74). Consequently, 28 U.S.C. § 1367(c)(3) is also grounds for this court to decline to exercise supplemental jurisdiction over the Lahrses' claims.

Accordingly, the HOA and Kupperlin's motion to dismiss for lack of diversity is granted.

*B. Motion for partial summary judgment*

The Lahrses' motion for partial summary judgment seeks a judicial declaration that their title insurance policy covers the foreclosure sale. (ECF No. 127). The Lahrses argue that their title insurance policy does not contain an "exception from coverage" pertaining to BNYM's lien claim arising out of the foreclosure sale. *Id.* Indeed, the parties agree that the title insurance policy did not contain the exception when it was prepared on December 18, 2013, or when it was sent again on March 31, 2014. (ECF Nos. 127 at 5; 142 at 9–10). However, Commonwealth and Lawyers Title assert that the "[t]he omission of that [e]xception from the copy of the [p]olicy sent to them *initially* resulted from a drafting error that occurred when the [p]olicy was prepared." (ECF No. 142 at 5).[2]

"Reformation is available as an equitable remedy to a party seeking to alter a written instrument which, because of a mutual mistake of fact, fails to conform to the parties' previous understanding or agreement." *Helms Constr. & Dev. Co. v. State*, 634 P.2d 1224, 1225 (Nev. 1981). Reformation is available "[w]here the agreement as reduced to writing omits or contains

---

[2] To that end, Commonwealth and Lawyers have filed an amended answer to Lahrses' third-party complaint and a counterclaim seeking reformation of the policy. (ECF No. 146).

terms or stipulations contrary to the common intention of the parties." *Hearne v. Marine Ins. Co.*, 87 U.S. 488, 490 (1874). If there is such an omission, "the instrument will be corrected so as to make it conform to their real intent." *Id.*

Reformation is not available where there is simply ambiguity. Ambiguity is, by definition, "[d]oubtfulness or uncertainty of meaning or intention, as in a contractual term or statutory provision; indistinctness of signification, esp. by reason of doubleness of interpretation." BLACK'S LAW DICTIONARY 97 (10th ed. 2009). Therefore, ambiguity exists where a term is subject to two reasonable interpretations. *Accord Hamdan v. Rumsfeld*, 548 U.S. 557, 719(2006) ("[A]n ambiguous treaty provision . . . is susceptible of two plausible, and reasonable, interpretations . . . ."); *Nay v. State*, 167 P.3d 430, 433 (Nev. 2007) ("Ambiguity is found where the statutory language lends itself to two or more reasonable interpretations." (internal quotation marks and footnote citation omitted)); *McKay v. Board of Supervisors*, 730 P.2d 438, 442 (Nev. 1986) ("Where a statute is capable of being understood in two or more senses by reasonably informed persons, the statute is ambiguous.").

In sum, "[r]eformation should be used to correct errors in expressing the terms of a contract and should not be used to create new ones." *25 Corp. v. Eisenman Chem. Co.*, 709 P.2d 164, 171 (Nev. 1985).

The Lahrses argue that "'black letter' law in Nevada" allocates the risk of error to the insurance company "whether you call it an ambiguity or a 'mistake' in coverage." (ECF No. 144 at 8). The Lahrses double-down on the argument, contending that "[t]he legal arguments of Commonwealth and Lawyers Title here based on the 'objective manifestations' and 'mutual intention of the parties' are hogwash indeed." *Id.* Yet, the Lahrses's argument relies on the erroneous conflation of "mistakes"[3] with "ambiguity."

In this case, the terms of the exclusion are not subject to two reasonable interpretations and are therefore not ambiguous. Indeed, Mr. Lahrs testified at his deposition that he understood the "restrictions"—exceptions—in the policy were "things that the title insurance company is not

---

[3] A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." BLACK'S LAW DICTIONARY 1153 (10th ed. 2009).

James C. Mahan
U.S. District Judge

- 9 -

willing to cover[.]" (ECF No. 142-4 at 9). Mr. Lahrs went on to testify that exception number 52[4] would mean that BNYM's lien claim was not covered by the Lahrses' title insurance policy. *Id.* at 12–13. Mr. Lahrs testified that exception number 52 was in the third amended preliminary report. *Id.* Mr. Lahrs testified that exception number 52 would be part of the final title policy. *Id.* at 13.

On the other hand, Commonwealth and Lawyers Title informed the Lahrses that "items 41–51 & 54–62 will be removed from the final title policy." (ECF No. 127 at 5). Neither Commonwealth nor Lawyers Title informed the Lahrses that exception number 52 would be removed from the policy. *Id.* Nonetheless, the policy failed to include the exception. *Id.* at 6. This is necessarily an omission—a mistake—for which reformation is an available remedy.

As a result, there is no ambiguity regarding what the exception meant. There is only a question of whether the exception should have been in the policy as the parties discussed. Commonwealth and Lawyers Title have presented evidence to demonstrate a genuine issue of material fact regarding whether the policy ought to be reformed to conform with the parties' actual intent.

Accordingly, the Lahrses' motion for partial summary judgment is denied.

*C. Motion to compel arbitration*

In addressing a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citing 9 U.S.C. § 4; *Simula, Inc.*, 175 F.3d at 719–20).

The Ninth Circuit interprets arbitration agreements liberally and in favor of "the strong federal policy favoring arbitral dispute resolution." *See Simula, Inc.*, 175 F.3d at 720. "A court will not ordinarily except a controversy from coverage of a valid arbitration clause unless it may be said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 990

---

[4] Exception number 52 was discussed in the preliminary reports, but became exception number 48 when incorporated into the policy.

James C. Mahan
U.S. District Judge

- 10 -

(S.D. Cal. June 29, 1999) (quoting *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984)) (internal quotations omitted).

The Lahrses are former members of First 100 and, as part of their membership, executed a binding operating agreement. (ECF No. 130 at 3). The operating agreement contained a binding arbitration clause, which provided that "[a]ny dispute, controversy, or claim arising out of or relating to this [a]greement or the breach thereof shall solely be settled by arbitration under the Commercial Arbitration rules of the American Arbitration Association ('AAA')." *Id.* at 3–4). First 100 and Bloom allege that the Lahrses claims all "arise under an unambiguous arbitration clause that they consented to when they both executed the [operating agreement]." *Id.* at 4.

The Lahrses do not dispute that their crossclaims against First 100 and their third-party complaint against Bloom is subject to the binding arbitration clause in the operating agreement. (*See generally* ECF No. 133). To the contrary, the Lahrses "have no objection or opposition to submitting only those crossclaims to binding arbitration." *Id.* at 3. However, the Lahrses do contend that "any other relief impliedly or ostensibly sought by this pending motion but for which no motion has bene properly made (i.e., liquidated damages), . . . are also subject to binding arbitration." *Id.* at 4.

Accordingly, Bloom and First 100's motion to compel arbitration is granted, and the case shall be stayed pending arbitration.[5] The court declines to consider the issue of liquidated damages, which is properly subject to arbitration agreement.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion to dismiss (ECF No. 92) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the Lahrses' cross claims against the HOA and Kupperlin be, and the same hereby are, DISMISSED without prejudice.

---

[5] Although First 100 and Bloom argue that the court should dismiss the Lahrses' claims for lack of jurisdiction, the FAA requires a stay of litigation when courts grant a petition to compel arbitration. 9 U.S.C. § 3. The stay lasts "until such arbitration has been had." *Id.*

James C. Mahan
U.S. District Judge

- 11 -

IT IS FURTHER ORDERED that the Lahrses' motion for partial summary judgment (ECF No. 127) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that First 100 and Bloom's motion to compel arbitration (ECF No. 130) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the Lahrses' claims against First 100 and Bloom be, and the same hereby are, STAYED pending the close of arbitration.

IT IS FURTHER ORDERED that the parties shall file a joint status report or stipulation of dismissal within ten (10) days after the close of arbitration.

IT IS SO ORDERED.

DATED September 9, 2019.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 12 -